JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01777-JLS-JDE                                                      Date: May 28, 2020
Title: International Business Machines Corporation v. Zillow Group, Inc. et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

|   Terry Guerrero   |          N/A          |
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                       Not Present

**PROCEEDINGS:   (IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A) (Doc. 56)**

Before the Court is Defendants' ("Zillow's") Motion Under F. R. Civ. P. 12(b)(3) to Dismiss for Improper Venue or, in the Alternative, to Transfer Under 28 U.S.C. § 1406 or § 1404(a) (the "Motion"). (Mot., Doc. 56; Mem., Doc. 55.) Plaintiff International Business Machines Corporation ("IBM") opposed, and Zillow replied. (Opp'n, Doc. 57; Reply, Doc. 58.) Per the Court's order at oral argument, the parties each submitted a supplemental brief as to the venue aspect. (IBM Suppl., Doc. 79; Zillow Suppl., Doc. 86.) The Court then took the matter under submission. Having considered the parties' papers and oral argument, and for the reasons set forth below, the Court GRANTS Zillow's Motion to transfer the case to the Western District of Washington for the convenience of the parties and witnesses.

**I.      BACKGROUND**

In this patent infringement action, filed on September 17, 2019, IBM alleges that Zillow infringes seven of its patents: United States Patent Nos. 7,072,849 (the "'849 Patent"); 7,076,443 (the "'443 Patent"); 7,187,389 (the "'389 Patent"); 7,631,346 (the "'346 Patent"); 8,315,904 (the "'904 Patent"); 9,158,789 (the "'789 Patent"); and 9,245,183 (the "'183 Patent") (collectively, the "Patents-in-Suit"). In the instant Motion, Zillow seeks dismissal of the action pursuant to Rule 12(b)(3) for improper venue under the patent venue statute, 28 U.S.C. § 1400(b). Alternatively, Zillow moves to transfer the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01777-JLS-JDE                                      Date: May 28, 2020
Title: International Business Machines Corporation v. Zillow Group, Inc. et al.

case to the Western District of Washington for improper venue and in the interest of justice under 28 U.S.C. § 1406(a), or for the convenience of the parties and witnesses, and in the interest of justice under 28 U.S.C. § 1404(a).

## II.    LEGAL STANDARD

Once venue is properly challenged, a plaintiff has the burden of showing that the chosen venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). If the Court determines that venue is improper, it must dismiss the action, or, if justice so requires, transfer the matter to a district "in which it could have been brought." 28 U.S.C. § 1406(a). "[T]he district court has broad discretion under 28 U.S.C. § 1406(a) to decide whether to dismiss for lack of venue or to transfer in the interest of justice." *Perrin v. TRW Info. Servs.*, 990 F.2d 1259 (9th Cir. 1993).

Even where venue is proper, however, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

"Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted in part) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "In exercising this discretion, various factors have been approved by the Ninth Circuit." *F.T.C. v. Watson Pharm., Inc.*, 611 F. Supp. 2d 1081, 1086 (C.D. Cal. 2009). Those factors, the "*Jones* factors," include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01777-JLS-JDE                                       Date: May 28, 2020
Title: International Business Machines Corporation v. Zillow Group, Inc. et al.

compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.[1]

*Jones*, 211 F.3d at 498–99. The burden for justifying a transfer under § 1404(a) rests with the party seeking the change in venue. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

With respect to transfer under Section 1406, "no particular factors guide the decision ordering transfer." *Nelson-Devlin v. Eli Lilly & Co.*, No. 2:14-CV-02811-KJM, 2015 WL 5436700, at *5 (E.D. Cal. Sept. 15, 2015). Rather, "[t]he court looks to whether the action could have been brought in the transferee venue, and 'considerations similar to those in the [] § 1404(a) . . . analysis.'" *Id.* (quoting *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1214 (D. Haw. 2002)).

## III. DISCUSSION

"[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)); *see also Sinochem*, 549 U.S. at 431 ("[T]here is no mandatory sequencing of jurisdictional issues.") (internal quotation marks omitted). Here, Zillow's motion to dismiss for improper venue requires a significantly more extensive analysis than its motion to transfer. Moreover, "[i]t is unnecessary to determine whether venue is proper here [] because if venue were improper, the court would transfer this case . . . under § 1406(a)." *See Moore v. Magiera Diesel Injection Servs., Inc.*, No. 18 C 3762, 2019 WL

---

[1] The parties agree that the first, second, and seventh factors are either inapplicable or neutral as applied. (*See* Mem. at 24; Opp'n at 25.) The Court agrees and therefore does not address these factors in its analysis. The Court also does not address the two additional factors the Ninth Circuit identified in *Jones* as significant in the § 1404(a) analysis: "the presence of a forum selection clause" and "the relevant public policy of the forum state, if any," 211 F.3d at 499 (internal quotation marks omitted). A forum selection clause is, naturally, not present, and the Court deems irrelevant the public-policy aspect, *see Cascades Projection LLC v. NEC Display Sols. of Am., Inc.*, No. CV 15-00273-SJO-RZ, 2015 WL 12698454, at *6 (C.D. Cal. June 5, 2015) ("Because patent infringement cases do not typically involve state-specific policy, this factor is neutral in a patent infringement case.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01777-JLS-JDE    Date: May 28, 2020
Title: International Business Machines Corporation v. Zillow Group, Inc. et al.

2502029, at *4 (N.D. Ill. June 17, 2019). Accordingly, the Court exercises its discretion by deciding Zillow's motion to transfer before addressing its motion to dismiss for improper venue.

### A. Propriety of Transferee District

"[T]he transferee court must be one in which the action might otherwise have been brought" under both Sections 1404 and 1406. *Nelson-Devlin*, 2015 WL 5436700, at *6.

In patent infringement cases, "[28 U.S.C] § 1400(b) is the sole and exclusive provision controlling venue" and "is not to be supplemented by . . . § 1391(c)." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) (internal quotation marks omitted). Under § 1400(b), venue is proper either "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "As applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation." *TC Heartland*, 137 S. Ct. at 1521.

Both Zillow entities are incorporated in Washington (First Am. Compl. ("FAC), Doc. 40 ¶¶ 31, 33), rendering venue in the Western District of Washington proper under § 1400(b). And, as Zillow points out, a district court in the Western District of Washington would have subject-matter jurisdiction over this action under 28 U.S.C. § 1338 and personal jurisdiction over both Zillow entities given they are "at home" in Washington, *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction.") (internal quotation marks and brackets omitted).

Accordingly, this case could have been brought in the Western District of Washington.

### B. The *Jones* Factors

#### 1. Plaintiff's Choice of Forum

"Courts generally accord 'great weight' to [a] plaintiff's choice of forum." *United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*, 2019 WL 1024962, at *3 (N.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01777-JLS-JDE | Date: May 28, 2020 |
| Title: International Business Machines Corporation v. Zillow Group, Inc. et al. | |

Mar. 4, 2019) (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). However, "where the plaintiff does not reside in his chosen forum, courts accord the plaintiff's choice considerably less deference." *Bondali v. Yum! Brands, Inc.*, No. SACV-13-117-JST-JPR, 2013 WL 12129379, at *5 (C.D. Cal. May 1, 2013). That is precisely the case here. (*See* FAC ¶ 30 (identifying IBM as a New York corporation with its principal place of business in New York).) Deference to a plaintiff's choice of forum is also substantially reduced when the center of gravity of the alleged infringement is elsewhere. *See Am. GNC Corp. v. GoPro, Inc.*, No. 18-CV-00968-BAS-BLM, 2018 WL 6074395, at *15 (S.D. Cal. Nov. 6, 2018). As the Court discusses in subsection B.3, *infra*, the center of gravity of alleged infringement is in the Western District of Washington.

IBM's choice of forum therefore carries little weight.

### 2.     Parties' Contacts with the Forum

The parties both have contacts with this forum, but they both also have contacts with the Western District of Washington.

IBM has an office in Costa Mesa, which forms part of this District. "IBM conducts regular business from its Costa Mesa office," where employees "provide business services and work on IBM products ranging from artificial intelligence to content management and distributed file sharing." (Opp'n at 24 (citing FAC ¶ 27; Ex. 31 to FAC, Doc. 40-3.) While IBM characterizes these contacts as "substantial" (*see* Opp'n at 24), Zillow points out that IBM also has an office in Seattle, which forms part of the Western District of Washington (Mem. at 22). In Opposition, IBM does not offer any information about its Seattle office, precluding a comparison of its contacts with the two Districts.

Zillow, too, has an office in the District—in Irvine. (FAC ¶ 5.) The office is quite large—although neither party offers any information about how the Irvine office stands in relation to Zillow's other offices—and employs "numerous" employees. (*See id.* ¶¶ 5–6.) But Zillow's contacts with the Western District of Washington are decidedly stronger, for Zillow is a Washington corporation headquartered in Seattle. (*Id.* ¶¶ 31, 33.)

Accordingly, this factor weighs in favor of transfer, albeit slightly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01777-JLS-JDE　　　　　　　　　　　　　　　Date: May 28, 2020
Title: International Business Machines Corporation v. Zillow Group, Inc. et al.

### 3.　　Contacts Relating to Plaintiff's Claims in the Forum

"In patent infringement actions, the preferred forum is 'that which is the center of gravity of the accused activity.'" *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n.17 (D.N.J. 1993)); *Ossur HF v. iWalk, Inc.*, No. SACV 11-1759-JST-MLGX, 2012 WL 13055882, at *2 (C.D. Cal. June 12, 2012) (same). Therefore, instead of determining whether IBM's allegations are connected to the parties' contacts with the Central District, the Court assesses whether the action's "center of gravity" is in this District (IBM's position) or the Western District of Washington (Zillow's position). The Court finds that the center of gravity of the accused activity is in the Western District of Washington.

"The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Amazon.com*, 404 F. Supp. 2d at 1260 (internal quotation marks omitted). "This location is often where the development, research, and marketing of the accused product occurred." *Signal IP, Inc. v. Ford Motor Co.*, No. LA CV14-03106 JAK, 2014 WL 4783537, at *3 (C.D. Cal. Sept. 25, 2014) (citing *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *5 (N.D. Cal. Feb. 22, 2008)). "This makes sense because in determining whether infringement has been established, the principal target of inquiry is the design and construction of the accused product. The trier of fact will be asked to compare the claims in the patent with the accused product—examining its development, its components, its construction, and how it functions." *Arete Power*, 2008 WL 508477, at *5. Indeed, "[e]ven where there are sufficient contacts with the chosen forum and venue is proper, some courts have favored transfer to the location where the accused product is made or where major marketing and sales decisions are made." *Secured Mail Sols., LLC v. Advanced Image Direct, LLC*, No. SACV 12-01090-DOC, 2013 WL 8596579, at *3 (C.D. Cal. Jan. 30, 2013) (citing *Pinpoint, Inc. v. Groupon, Inc.*, No. 11 C 5597, 2011 WL 6097738, at *2–4 (N.D. Ill. Dec. 5, 2011)).

Here, IBM alleges infringement by two groups of Zillow products: consumer-facing ("B2C") and business-facing ("B2B"). (*See* FAC ¶¶ 12, 14, 90.) More specifically, "IBM identifies two types of [allegedly] infringing B2C products: Zillow's consumer website (e.g. www.zillow.com) and Zillow's mobile applications" and "four

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01777-JLS-JDE | Date: May 28, 2020 |
| Title: International Business Machines Corporation v. Zillow Group, Inc. et al. | |

[allegedly] infringing B2B products: Zillow's Premier Agent, the Zillow Group Media website, the Zillow Offers service, and the Promoted Communities platform." (Opp'n at 13 (citing FAC ¶ 90).) IBM summarizes its allegations of infringement as follows: "Zillow infringes in this District by (1) performing method steps on user devices; (2) performing method steps on servers in this District; (3) acting as an end user; (4) making, using, and selling the claimed systems; (5) inducing [at least users', browsers', and mobile operating systems' direct] infringement; and (6) contributing to [at least users', browsers', and mobile operating systems' direct] infringement." (Opp'n at 12; FAC ¶¶ 23, 25.)

     In support of its Motion, Zillow submits evidence showing that "the relevant design, development, and support teams and personnel for the accused consumer-facing products are located in Seattle." (Mem. at 13 (citing Moch Decl., Ex. A to Crosby Decl., Doc. 55-1 ¶¶ 2–10).) IBM does not dispute this. (*See* Opp'n at 13–18.) As for the accused business-facing products, IBM contends that "[t]he location of employees who know about the accused technology [] weighs against transfer." (*Id.* at 14.) But IBM offers in support of this contention the names of a handful of Irvine-based Zillow employees whose job responsibilities IBM gleaned from LinkedIn job descriptions. (*See id.* at 14–15 (citing, *e.g.*, Exs. 11–13 to FAC, Doc. 40-2; Ex. 4 to Matulewicz-Crowley Decl., Doc. 57-2).) Zillow counters that at least some of the employees IBM identifies do not "perform [] work for any accused functionality" (Reply at 15 (emphasis removed)) and offers more general evidence that at least one of the accused B2B products, "the Premier Agent mobile applications and their constituent functionalities[,] are designed and developed by teams located in Zillow's Seattle and San Francisco offices" (Clottey Decl., Doc. 58-4 ¶ 2). Zillow also offers evidence that some of the employees IBM identifies work on internal tools that, while related to accused B2B products, are not accessible to third parties and are therefore not accused of infringement. (*See, e.g.*, LaJoie Decl., Doc. 58-2 ¶ 2.)

     More importantly, IBM represents in its Opposition that the "B2B products infringe the Patents-in-Suit both independently and through their role supporting the infringing B2C products," which is why IBM "references the B2C platforms in its discussion of the accused B2B products." (Opp'n at 13.) Specifically, "[t]he B2B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01777-JLS-JDE | Date: May 28, 2020 |
| Title: International Business Machines Corporation v. Zillow Group, Inc. et al. | |

products interact with the B2C products because they permit professionals to find leads, purchase ads, or promote their service *on the B2C platforms*." (*Id.* (emphasis added).) In other words, IBM characterizes the B2B products as derived from, or at least dependent on, the B2C products. Therefore, the strong relationship between the B2C products and the Western District of Washington is central to the center-of-gravity analysis.

In sum, the Court has before it uncontroverted evidence that the center of gravity for Zillow's consumer-facing products is in the Western District of Washington and some evidence that casts doubt on IBM's characterization of this District as the center of gravity for Zillow's accused business-facing products. Given that the two kinds of products are so intertwined, the Court finds that the center of gravity for the accused activity in this action is Seattle.

Accordingly, this factor weighs strongly in favor of transfer.

### 4. Ease of Access to Sources of Proof and Differences in Costs of Litigation in the Forums

For their discussion of litigation costs, the parties rely on an assessment of the relative ease of access to sources of proof in the two judicial fora. (*See* Mem. at 20–21; Opp'n at 22–23.) The Court therefore focuses its analysis on that assessment.

Zillow contends that "[t]he overwhelming majority of the witnesses with knowledge of the facts relevant to Zillow's [alleged] infringement, including the programmers and engineers familiar with and responsible for the accused products, are located in Seattle." (Mem. at 16.) But, in support of this contention, Zillow cites exclusively and repeatedly to the Moch Declaration, which, as IBM aptly points out (*see* Opp'n at 19), concerns only Zillow's *consumer*-facing accused products (*see* Moch Decl.). The Court declines Zillow's invitation to disregard allegations related to Zillow's B2B products based on Zillow's disputed view that its "B2C products are [] the only products here at issue" (Reply at 20; *see also id.* at 21 ("IBM lists employees who it acknowledges provide support only for Zillow B2B products and their users, which are not relevant here.") (internal citation and quotation marks omitted)). "To demonstrate inconvenience, the moving party should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-01777-JLS-JDE                                Date: May 28, 2020
Title: International Business Machines Corporation v. Zillow Group, Inc. et al.

relevant to the action." *Royal Queentex Enterprises v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *6 (N.D. Cal. Mar. 1, 2000) (internal quotation marks omitted). Zillow has not done that, instead focusing its efforts on picking apart the merits of IBM's allegations. At bottom, Zillow identifies by name only one expected witness of its own. (*See* Mem. at 17; *cf.* Reply at 17 ("Zillow has not yet had an opportunity to review infringement contentions from IBM,[2] and therefore cannot predict who among its dozens of Seattle-based employees will be best situated to speak to those contentions.").)

Instead of identifying its own witnesses, and in addition to calling into question the sufficiency of IBM's allegations, Zillow casts doubt on the relevance of IBM's potential witnesses. To be sure, IBM's list of potential witnesses is not flawless. IBM appears to have selected its witnesses by conducting a LinkedIn sweep of Irvine-based Zillow employees, which yielded thirty-nine potential witnesses based on job title and description as presented on LinkedIn—which, at the end of the day, is a self-promotion platform. (*See* Opp'n at 18–19 (citing Exs. 8–11, 14–36 to FAC, Docs. 40-2, 40-3).) And Zillow explains why a number of those job descriptions might belie the significance of those employees' relationship to the accused products and/or functionalities. (*See, e.g.*, Reply at 19 (explaining that, while "IBM identifies Justin LaJoie as 'lead[ing] various product and engineering teams that develop software' for 'Zillow Offers,'" LaJoie's team actually "works solely on internal tools that IBM does not accuse" of infringement) (quoting Opp'n at 15; then citing LaJoie Decl. ¶¶ 2–4).)

But sources of proof encompass not only witnesses. In terms of documents, Zillow contends that "any documents related to the design and development of the accused products . . . would be located where those products were designed and developed, in Seattle." (Mem. at 20 (citing Moch Decl. ¶ 5).) To support this contention, however, Zillow again relies on the Moch Declaration, which concerns only Zillow's consumer-facing products. Regardless, "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for

---

[2] IBM has since served its infringement contentions on Zillow. Zillow's motion to strike those infringement contentions is under submission. (*See* Doc. 93 (taking motion under submission).)

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-01777-JLS-JDE | Date: May 28, 2020 |
| Title: International Business Machines Corporation v. Zillow Group, Inc. et al. | |

documents to be transferred to different locations." *Szegedy v. Keystone Food Prod.*, Inc., No. CV 08-5369 CAS-FFM, 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009).

Still, "[a]lthough electronic transmission of documents may mitigate the inconvenience of access to documents relating to infringement, . . . there are particular sensitivities concerning access to source code," sensitivities that Zillow raises here. *Signal IP*, 2014 WL 4783537, at *5 (internal citation omitted). Here, "[a]mong the documents and evidence stored in Seattle is source code that Zillow intends to make available for inspection, if at all, only at the offices of its counsel in Seattle." (Mem. at 19.) While IBM counters that "[t]he location where Zillow wishes to produce its source code is irrelevant," it does so without support to legal authority. (*See* Opp'n at 21.)

In sum, Zillow has not carried its burden in terms of witnesses, even if IBM's list is not entirely persuasive. But the presence of Zillow's source code in Seattle does weigh in favor of transfer. *Cf. TransPerfect Glob., Inc. v. Motionpoint Corp.*, No. 10-02590 CW, 2010 WL 3619565, at *4 (N.D. Cal. Sept. 13, 2010) ("Plaintiffs claim that the source code and other documents relating to OneLink are housed in this district, which tips the weight of this factor against transfer.").

Taken together, the factors weigh in favor of transfer. As the Court notes above, "the preferred forum [in patent infringement cases] is that which is the center of gravity of the accused activity." *Amazon.com*, 404 F. Supp. 2d at 1260 (internal quotation marks omitted). Here, the Court found that the center of gravity is in the Western District of Washington. That neither party has an especially strong relationship with this District and Zillow's source code is located in Seattle serve to reinforce the Court's conclusion that transfer is warranted.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Zillow's Motion as to transfer and TRANSFERS the action to the Western District of Washington.

Initials of Preparer:  tg

___